OPINION BY BOWES, J.:
In these consolidated appeals, J.C., ("Father") appeals from the trial court orders that relinquished jurisdiction of the custody litigation to Tompkins County New York and dismissed the custody complaint that he filed in Philadelphia County Family Court. We reverse and remand for further proceedings.
Father and K.C. ("Mother") married during August 2012, while both were residents *1126 of New York. The couple moved to Philadelphia, Pennsylvania during May 2016, and had one child, E.C., a daughter who was born the following month. They separated eight months later, when Mother and E.C. returned to Mother's hometown of Ithaca, New York. Upon arriving in New York, Mother immediately filed in the family division of that jurisdiction a custody petition and the equivalent of a petition for protection from abuse ("PFA"). The Honorable Joseph R. Cassidy of the Tompkins County Family Court presided over the New York proceedings. On February 23, 2017, Judge Cassidy entered an ex parte order that awarded Mother temporary physical custody of E.C.
Father challenged New York's subject matter jurisdiction over the custody proceeding, and on March 6, 2017, he filed a custody complaint in the Philadelphia Court of Common Pleas. Father stressed that Pennsylvania was E.C.'s home state pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S. §§ 5401 - 5482, which applies to both Pennsylvania and New York. On the same date, he filed a motion for expedited relief informing the trial court of the New York proceedings and requesting, inter alia , that the trial court exercise its home-state jurisdiction.
On March 23, 2017, Mother filed preliminary objections to Father's complaint on the basis of forum non conveniens and requested that the trial court transfer jurisdiction of the custody matter to New York pursuant to 23 Pa.C.S. § 5427, which we set forth infra . The following day, she supplemented her position with a motion to stay Father's custody litigation pending the determination of subject matter jurisdiction in New York. The preliminary objection outlined several allegations of abuse that occurred in Pennsylvania and various jurisdictions other than New York. Father countered with an answer to Mother's preliminary objection. He challenged the preliminary objections as an improper mechanism to assert forum non conveniens . In addition, Father contested the allegations of abuse, leveled countervailing claims of abuse against her, and asserted that the relevant incidents occurred either in Pennsylvania or a jurisdiction other than New York.
On April 6, 2017, a Philadelphia motions court judge, who was not assigned the custody litigation, heard argument on Mother's motion to stay. The parties listed the matter for motions court specifically because a custody hearing was scheduled in the trial court the following day. After considering the parties' countervailing arguments, the motions court stayed the Pennsylvania proceedings until the New York court determined its subject matter jurisdiction. Significantly, while Mother and Father presumed that a telephone conference would occur between the jurists presiding over the respective proceedings in Pennsylvania and New York, neither party received notice of a pending communication.
On April 19, 2017, the trial court held a telephone conference with its New York counterpart, Judge Cassidy. Mother and Father were not informed of the conference and were not invited to participate. Following the discussion, the trial court ceded subject matter jurisdiction to New York as the more convenient location pursuant to § 5427. Accordingly, on June 5, 2017, the trial court entered an order that formally relinquished jurisdiction to New York. Two days later, a different Pennsylvania trial judge entered an administrative order that dismissed Father's custody complaint for lack of jurisdiction.
Father appealed the June 5 and 7, 2017 orders (collectively referred to as "the jurisdictional *1127 orders"), and we consolidated the appeals sua sponte .
Father presents four questions for our review:
A. Whether the Trial Court erred and/or abused its discretion by issuing its Final Orders without findings of fact as well as an improper analysis and application of the inconvenient forum factors pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S.A. § 5427 ?
B. Whether the Trial Court erred and/or violated Father's procedural due process rights by failing to follow the communication requirements of the Uniform Child Custody Jurisdiction and Enforcement Act?
C. Whether the Trial Court erred, abused its discretion, and/or violated Father's procedural due process rights when it stayed the custody action and then abdicated its responsibilities under the Uniform Child Custody Jurisdiction and Enforcement Act to the New York Court?
D. Whether the Trial Court erred, abused its discretion, and/or violated Father's procedural due process rights by failing to consider Father's arguments in the record regarding Mother's violation of Pennsylvania's relocation requirements per 23 Pa.C.S.A. § 5337 and Pa.R.C.P. 1915.17 ?
Father's brief at 7.
We review a trial court's decision to exercise or decline subject matter jurisdiction for an abuse of discretion. S.K.C. v. J.L.C. , 94 A.3d 402 (Pa.Super. 2014) ("when a trial court possesses subject matter jurisdiction over a child custody dispute, a trial court's decision to exercise that jurisdiction is subject to an abuse of discretion standard of review."). As we previously explained, "an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." B.A.B. v. J.J.B. , 166 A.3d 395, 403 (Pa.Super. 2017), quoting J.K. v. W.L.K. , 102 A.3d 511, 513 (Pa.Super. 2014).
The following statutory scheme informs our discussion. The UCCJEA governs questions of subject matter jurisdiction between different states having interests in custody matters. It is beyond peradventure that the trial court had initial subject matter jurisdiction over the custody litigation pursuant to § 5421(a)(1), because Pennsylvania was E.C.'s home state within six months of the date the proceedings commenced, and Father continues to reside in the Commonwealth.[1] Thus, the Philadelphia trial court has subject matter jurisdiction to make the initial custody determination.
When Mother filed the PFA petition in New York, Judge Cassidy exercised temporary emergency jurisdiction pursuant to New York's statutory equivalent of § 5424. However, Judge Cassidy was required to communicate with the trial court immediately after discovering that Father had *1128 commenced proceedings in Pennsylvania, E.C.'s home state.[2] See 23 Pa.C.S. § 5424(d).[3] Likewise, upon learning of Judge Cassidy's temporary order granting Mother sole physical custody, the trial court presiding over Father's custody complaint was required to contact Judge Cassidy pursuant to § 5424(d), in order to, inter alia , determine the duration of the temporary order.
Finally, in relation to the trial court's communication with Judge Cassidy, the UCCJEA provides:
§ 5410. Communication between courts
(a) General rule .-A court of this Commonwealth may communicate with a court in another state concerning a proceeding arising under this chapter.
(b) Participation of parties .-The court may allow the parties to participate in the communication. If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.
....
(d) Record .-Except as otherwise provided in subsection (c), a record must be made of a communication under this section. The parties must be informed promptly of the communication and granted access to the record.
....
23 Pa.C.S. § 5410(a), (b), and (d). Thus, while permitted to do so, the two tribunals are not required to include Mother and Father in their on-the-record exchange. Nevertheless, if the parties are excluded from the jurists' discourse, they are entitled to notice of the communication and access to the record. Furthermore, the parties are entitled to submit relevant facts and make legal arguments prior to the ultimate decision on jurisdiction.
With this statutory framework in mind, we next address the pertinent question in the case at bar: whether the trial court erred and/or committed an abuse of discretion in relinquishing initial jurisdiction to the New York court as the more appropriate forum pursuant to § 5427 following its communication with Judge Cassidy. Subsection 5427(b) of the UCCJEA enumerates eight factors that the trial court was required to consider in deciding whether to retain or relinquish subject matter jurisdiction: The statute provides:
*1129 (b) Factors .-Before determining whether it is an inconvenient forum, a court of this Commonwealth shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
(2) the length of time the child has resided outside this Commonwealth;
(3) the distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;
(4) the relative financial circumstances of the parties;
(5) any agreement of the parties as to which state should assume jurisdiction;
(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
(8) the familiarity of the court of each state with the facts and issues in the pending litigation.
23 Pa.C.S. § 5427(b). Mother had the burden of proving that Pennsylvania, as the home state, was an inconvenient forum and that New York would be more appropriate pursuant to § 5427(b). Joselit v. Joselit , 375 Pa.Super. 203, 544 A.2d 59, 62 (Pa.Super. 1988) (referring to 42 Pa.C.S. § 5348(a), the predecessor to § 5427 ).
As the first three issues that Father raises in his statement of questions presented overlap, we address those arguments collectively. The crux of these contentions is that the trial court's jurisdictional decisions should be reversed because the court defied its statutory mandate and infringed on Father's due process by: (1) failing to contact Judge Cassidy immediately upon learning that New York exercised emergency jurisdiction; (2) deferring the ultimate decision of jurisdiction to Judge Cassidy; and (3) declining to hold an evidentiary hearing regarding the jurisdictional factors.
First, we address Father's assertion that the trial court failed to contact Judge Cassidy in a timely manner. Pursuant to § 5424(d), "[a] court of this Commonwealth which is exercising [home-state] jurisdiction ..., upon being informed that a child custody proceeding has been commenced in ... another state under [temporary emergency jurisdiction], shall immediately communicate with the court of that state[.]". Father emphasizes that the trial court did not communicate with Judge Cassidy until approximately forty-four days after he first provided it notice in his custody complaint of the New York court's temporary custody order. Nonetheless, no relief is due.
While Father argues that the trial court erred as a matter of law by failing to contact New York immediately, he neglects to assert that he suffered any actual harm as a result of the glitch. Indeed, as it relates to this issue, Father simply levels the conclusory position that the delays were "clear violations of UCCJEA Section 5424 and a denial of [his] due process rights." Father's brief at 41. As Father was either unable or unwilling to articulate how he was harmed by the trial court's failure to contact Judge Cassidy immediately, the misstep was harmless inasmuch as the forty-four-day delay did not contribute to the trial court's decision to relinquish *1130 jurisdiction or impede Father's ability to challenge that decision. Harman ex rel. Harman v. Borah , 562 Pa. 455, 756 A.2d 1116, 1122 (2000) ("[relief] is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate .... that he or she has suffered prejudice from the mistake").
The second component of Father's argument relates to whether the trial court abdicated its duty by deferring to Judge Cassidy the ultimate decision regarding whether or not to exercise subject matter jurisdiction. The following facts are relevant to our analysis.
On April 19, 2017, while the Pennsylvania custody action was stayed pursuant to the motion court's April 6, 2017 order, and the parties were following the custody arrangement outlined in Judge Cassidy's temporary order, the two jurists communicated pursuant to §§ 5410 and 5424(d), in order to determine who would exercise subject matter jurisdiction over the custody case. At the time, Mother's preliminary objections seeking a § 5427forum non conveniens determination were pending in the trial court and Father's initial objection to the New York's jurisdiction remained before Judge Cassidy.
While the certified record does not disclose which court initiated the inter-court telephone conference, it is clear that Judge Cassidy directed the exchange, obtained the court reporter, and was responsible for transcribing the communication. Similarly, the record confirms that Judge Cassidy led the jurists' review of what they determined to be the relevant factors under § 5427(a). Following an off-the-record telephone conversation that lasted approximately fifteen minutes, Judge Cassidy succinctly recited the procedural posture of the two cases, noted that Pennsylvania was the home state pursuant to the UCCJEA, and outlined the reasons that the two courts agreed that New York was the more appropriate forum under § 5427.
The certified record belies Father's instant complaint that the trial court delegated its ultimate decision-making authority to Judge Cassidy. After presenting the courts' joint rationale for why New York was the more convenient forum, Judge Cassidy asked the trial court to confirm the collective perspective. He stated,
It is my understanding that [the trial court] is declining jurisdiction under the Domestic Relations Law 76-f[4 ][ (inconvenient forum) ], which permits such a [decision] upon review of these types of factors, and that [the New York court] will exercise jurisdiction over the case, despite the fact that the child's home state was technically Pennsylvania also under Domestic Relations Law 76.
[D]id I miss-I'm sure I missed something.
[Trial Court]: No, I think you made a very good recitation of what we discussed, Judge. I agree that New York, considering all of the factors that we discussed is a more convenient location and a proper place for jurisdiction of this matter .
N.T., 4/19/17, at 5-6 (emphasis added).
Father's assertion that the trial court abdicated its responsibility is based on the fact that Judge Cassidy spearheaded the inter-jurisdictional communication, led the discussion, and created the record. While *1131 we agree with Father's characterization of the trial court's passive role, we reject the argument that the trial court abdicated its statutory mandate to consider the relevant factors outlined in § 5427(b). Indeed, the trial court expressly adopted Judge Cassidy's recitation of their discussion of the relevant factors and specifically stated its agreement that New York was the more appropriate forum in light of all of the statutory factors that the jurists had discussed. Id . at 6. As the record sustains the trial court's statement that it rendered the ultimate decision to relinquish jurisdiction, we reject Father's claim of error.
Moreover, to the extent that Father attempts to manufacture trial court error by imputing the motions court's actions and statements in granting the April 6, 2017 stay of the Pennsylvania custody proceedings to the trial court, no relief is due. The crux of Father's contention is that the motions court misapprehended the legal framework and relinquished "plenary initial child jurisdiction" to New York by granting the stay pending Judge Cassidy's determination of jurisdiction. Father's brief at 21. Father develops this argument as follows: "By evading its obligation under the UCCJEA and deferring the issue to [Judge Cassidy], the [motions] court deprived Father of having his custody matter heard in the home state[.]"Id . Hence, Father seeks to bolster his argument regarding the trial court's alleged failure to satisfy the statutory mandate to make the ultimate determination as to the retention or relinquishment of subject matter to jurisdiction simply by equating the motions court with the trial court and imputing the former's alleged errors upon the latter.
First, in light of the communication requirements outlined in the UCCJEA at § 5410 and § 5424, we do not share Father's perspective that the motions court erred as a matter of law in issuing the temporary stay of Pennsylvania proceedings. More importantly, assuming, arguendo , that the motions court did err, we will not impute those alleged errors to the trial court in its determination to defer jurisdiction. Stated plainly, while the trial court declined to assert an active role in coordinating the telephone conference with Judge Cassidy or explaining their agreed upon rationale, the record confirms that the trial court recognized its statutory mandate to make the decision and that it ultimately made the determination to relinquish jurisdiction to New York. Phrased differently, the record will not sustain Father's suggestion that Judge Cassidy, as opposed to the trial court, decided that Pennsylvania is an inconvenient forum. See N.T., 4/16/17, at 4-6. Father's protestations to the contrary fail.
Next, Father presents a litany of challenges to the manner in which the jurisdictional conference was conducted. Recall that § 5410(d) specifically provides that "a record must be made of a communication under this section [and] [t]he parties must be informed promptly of the communication and granted access to the record." 23 Pa.C.S. § 2510(d). Father claims that the trial court violated the statutory framework outlined because it failed to: (1) provide prompt notice of the communication; (2) permit him to present relevant facts and legal argument prior to the determination; (3) conduct an on-the-record determination of the issue; and (4) afford access to the transcript. In sum, Father contends that the trial court neglected its obligations under the UCCJEA, and thereby\, denied him the fundamental due process rights afforded to him by the United States Constitution.
At the outset, we observe that Father's complaints regarding the trial court's failure to transcribe the telephone *1132 conference and provide him prompt access to a transcript of the exchange fail because Father cannot establish that he suffered harm as a result of either mistake. As we previously noted, the germane portion of the telephone conference was transcribed at Judge Cassidy's direction, and a transcript of the discussion was provided to Father as part of the New York proceedings. Thus, while Father is technically correct in asserting the trial court's dereliction of these components of § 5410(d), there is no relief for us to grant. Father received the transcript of the jurists' exchange from Judge Cassidy, and he successfully incorporated it into the certified record in the case at bar. There is nothing more to be done.
The remaining allegations of error concern the trial court's failure to provide Father prompt notice of the communication or the opportunity to present relevant facts and legal argument prior to the determination of subject matter jurisdiction pursuant to § 5410(b). Father also raises his entitlement to submit evidence and argument to the court regarding the decision to relinquish jurisdiction based on the assertion that the court is an inconvenient forum. For the reasons discussed infra , we conclude that the trial court's derogation of Father's statutory rights to present facts and submit legal argument is reversible error.
Section 5410(b) provides, in pertinent part, that "If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made." It is obvious from the certified record that the trial court not only neglected to provide Father prompt notice of the scheduled communication with Judge Cassidy as required by § 5410(d), it did not permit Father to present relevant facts and legal arguments prior to making the ultimate decision to relinquish subject matter jurisdiction.
Father contends that the lack of notice, and more importantly, the opportunity to participate, prevented him from challenging the procedural irregularities that plagued the trial court's management of the telephone conference from the outset. In rejecting Father's claim of error, the trial court first concluded that the communication was conducted under § 5426(b) regarding simultaneous proceedings, which the court found did not require any level of participation. Alternatively, the court reasoned that, since Father's New York counsel was present when Judge Cassidy informed the parties of the result of the telephone conference the following day, the allegation of error lacked merit. The trial court continued that, to the extent that Father was not given an express opportunity to present facts and legal arguments, any potential injury was alleviated by the fact that it possessed Father's motion for expedited relief and his answer to Mother's preliminary objections. Hence, the court concluded that Father's allegations of error due to the lack of participation were meritless. For the following reasons, we disagree.
First, as it relates to the trial court's reference to § 5426, the trial court misconstrued the application of simultaneous jurisdiction. Indeed, as our General Assembly clarified in incorporating the Uniform Law Comment to § 5426, that provision is utterly inapplicable where, as here, home state jurisdiction exists. The comment explains,
The problem of simultaneous proceedings is no longer a significant issue. Most of the problems have been resolved by the prioritization of home state jurisdiction under section 201 ( section 5421 ) ... If there is a home state, there can be no exercise of significant *1133 connection jurisdiction in an initial child custody determination and, therefore, no simultaneous proceedings [.]
Under this Act, the simultaneous proceedings problem will arise only when there is no home state , no state with exclusive, continuing jurisdiction and more than one significant connection state.
23 Pa.C.S. § 5426, Uniform Law Cmt. (emphases added).
Thus, contrary to the trial court's reliance upon § 5426 as a basis to prevent Father from submitting facts and argument prior to its decision to relinquish jurisdiction, in actuality, that section is inapplicable in scenarios where home state jurisdiction is uncontested. See 23 Pa.C.S. § 5426, Uniform Law Cmt. Accordingly, the trial court erred in invoking § 5426 as a bases for rejecting Father's claim of error.
Furthermore, the trial court's invocation of Judge Cassidy's subsequent recitation of the telephone conversation as a basis to reject Father's argument is also unpersuasive. The fact that the New York court provided Father a post-hoc explanation as to why the trial court relinquished jurisdiction one day earlier did not relieve the trial court of its obligations under § 5410 to provide prior notice and at least partial participation through the submission of facts and legal argument. Indeed, what would be the purpose of providing Father notice and argument the day after the trial court rendered its decision to relinquish jurisdiction? The trial court's reference to Judge Cassidy's subsequent explanation does not cure the deficiency.
Likewise, the trial court's reliance on the parties' pleadings is insufficient. Father's motion to expedite does not assert any facts that are relevant to the § 5427 determination of an inconvenient forum and there is no indication in the certified record that the trial court actually considered Father's answer to Mother's preliminary objections. While the trial court apparently drew its findings of fact from Mother's preliminary objection, it seemed to ignore the countervailing allegations of fact Father leveled in his response. The trial court's cursory review limited to select facts alleged in Mother's preliminary objections is an inadequate substitution for Father's statutory right to submit facts and present legal arguments under § 5410(b).
More importantly, to the extent that the court's after-the-fact references to two of Father's pleadings satisfied the general requirement that the court provide an opportunity to present facts and legal arguments in lieu of actual participation in the communication under § 5410(b), we find Father was entitled to submit evidence to the court on a completely independent basis, § 5427(b), regarding the determination of an inconvenient forum. Pursuant to § 5427, "the court shall allow parties to submit information and shall consider all relevant factors[.]" 23 Pa.C.S. § 5427(b) (emphasis added).
The trial court neglected to provided Father an opportunity, pursuant to either §§ 5410(b) or 5427(b), to present evidence and argument either orally or in a supplemental brief. The court's purported reliance upon select pleadings was insufficient to sustain the decision to relinquish jurisdiction. The UCCJEA mandates that the parties have the ability to present facts and legal arguments prior to the decision. Father was denied that opportunity. Moreover, when Father objected to the state of the record and requested an evidentiary hearing in his motion for reconsideration, the trial court rejected his entreaty and continued to rely on the bare allegations *1134 that Mother asserted in her preliminary objections.[5]
In sum, we conclude that the trial court abused its discretion by relinquishing jurisdiction to New York without permitting Father to submit information relevant to the § 5427(b) determination, or present facts and legal arguments pursuant to 23 Pa.C.S. § 5410, in conjunction with the telephone conference. The trial court's contravention of its statutory obligations denied Father a full and fair ability to litigate his case. Hence, we reverse the jurisdictional orders entered on June 5, and June 7, 2017, and we remand the case for the trial court to perform its mandated responsibilities in accordance with the UCCJEA, including the requirement that "the court shall allow the parties to submit information" relevant to the enumerated factors to determine an inconvenient forum. Furthermore, if the trial court elects to initiate a second communication with the New York court prior to rendering its decision, it still must comply with the dictates of § 5410(a-e).
Orders reversed. Matter remanded for further proceedings. Jurisdiction relinquished.

Section 5421 provides in pertinent part as follows:
(a) General rule .-Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:
(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;
See 23 Pa.C.S. § 5421(a)(1).

Since there was no previous child custody proceedings when New York obtained temporary emergency jurisdiction on February 23, 2017, that court's custody determination remained in effect until the trial court entered an order assuming home state jurisdiction. See 24 Pa.C.S. § 5424(b). Conversely, if Father had never commenced the underlying proceedings in Pennsylvania, the New York court would have assumed subject matter jurisdiction. See 24 Pa.C.S. § 5424(c).

The statute provides in pertinent part as follows:
(d) Mandatory communication between courts .-A court of this Commonwealth which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in or a child custody determination has been made by a court of a state having jurisdiction under sections 5421 through 5423, shall immediately communicate with the other court. A court of this Commonwealth which is exercising jurisdiction pursuant to sections 5421 through 5423, upon being informed that a child custody proceeding has been commenced in or a child custody determination has been made by a court of another state under a statute similar to this section, shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child and determine a period for the duration of the temporary order.
23 Pa.C.S. § 5424.

New York Domestic Relations Law 76(f) is the New York codification of what we recognize as 23 Pa.C.S. § 5427(a). The statutes are identical in all pertinent parts, including the eight factors that must be considered prior to determining whether a jurisdiction is an inconvenient forum.

Since we remand for further proceedings that comply with the participation requirements outlined in §§ 5410 and 5427, we do not address Father's remaining arguments that implicate the trial court's role as the ultimate arbiter of fact. Mindful that we must defer to the trial court's decision regarding credibility and the weight of the evidence, had we addressed Father's assertions, they would have failed. Likewise, we reject Father's contention that Mother's relocation to New York permitted her to circumvent the dictates of the UCCJEA and establish New York as the more convenient forum. Father's position discounts Mother's allegations of abuse. See 23 Pa.C.S. § 5337(k) ("Any consideration of a failure to provide reasonable notice [of relocation] ... shall be subject to mitigation if the court determines that such failure was caused in whole, or in part, by abuse").