J-A21020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALEXIS BLEAM | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN WYNNE | : | |
| | : | |
| Appellant | : | No. 2618 EDA 2022 |

Appeal from the Order Entered September 20, 2022
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2022-FC-0026

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                **FILED OCTOBER 25, 2023**

Kevin Wynne ("Father") appeals from the September 20, 2022 order entered in the Lehigh County Court of Common Pleas which, *inter alia*, denied his petition to modify custody and awarded Alexis Beam ("Mother") primary physical custody and Father partial physical custody of now six-year-old L.W. ("Child").  Father challenges the trial court's consideration of the 23 Pa.C.S. § 5328 custody factors.  Upon review, we affirm.

The relevant procedural and factual history follows.  Father and Mother are parents to Child, who was born in July 2017.  The parties were in a romantic relationship for approximately a year.  When they separated in 2018, they had a verbal custody agreement where Mother had physical custody of Child during the week, and Father had physical custody every weekend.  On September 2, 2020, following a custody trial, the court ordered the parties to have joint legal custody and shared 50/50 physical custody of Child.

On January 1, 2022, Father filed a petition to modify custody requesting primary physical custody of Child. According to Father, the petition was prompted by the fact that the parties live 45 minutes apart, Child was approaching school-age, and Child was going to need to establish a primary residence. On February 4, 2022, Mother filed an answer and counterclaim requesting primary physical custody of Child.

Father lives in a home with his fiancé, Michelle Blazofsky ("Fiancée") and their two-year-old child. Father is a Quality Assurance Analyst who works from home while Fiancée is a teacher in the Northern Lehigh School district. Father enrolled Child in preschool and summer camps.

Mother lives with her parents ("Maternal Grandmother" and "Maternal Grandfather" collectively, "Maternal Grandparents") in the home she grew up in. Mother is a stay-at-home parent during the day. She is enrolled in a master's degree program at Kutztown University and attends classes once or twice a week, relying on Maternal Grandmother to watch Child. Mother does not believe that preschool is beneficial, and instead takes Child to playgroups, museums, and parks during the day.

To address the parties' petitions, the court held a three-day-long custody trial. At the start of the proceedings, the parties agreed that since Child was approaching elementary school age, it would be in Child's best interest for the court to award one of them primary physical custody during the week, rather than shared physical custody. The parties also agreed to joint legal custody of Child.

During the trial, the court heard testimony from Father; Susan Kane Yaegar, M.D., Lehigh Valley Children's Emergency Room pediatric surgeon; Lena Kuhn, Mother's friend; Milissen Nunez, Mother's friend; Johnathan Velazquez-Rivera, Mother's friend, Michelle Blazofsky, Father's fiancée; Maternal Grandmother, and Maternal Grandfather.

At the conclusion of the trial the court issued an order and opinion, in which the court considered the Section 5328 custody factors and found all the factors to be neutral except for factor 3—the parental duties performed by each party on behalf of Child—which the court found to favor Mother.[1] The court denied Father's petition to modify, granted Mother's counterclaim for custody, and awarded Mother primary physical custody of Child during the school year. The court awarded Father partial physical custody of Child every other weekend during the school year, and shared physical custody of Child during the summer months.

Father timely appealed and filed a contemporaneous concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court relied on its September 20, 2022 Order and Opinion in lieu of a Rule 1925(a) opinion.

Father raises the following issues for our review:

A. Did the trial court err and abuse its discretion in giving weighted consideration to Mother as primary caregiver of []

---

[1] The trial court found custody factor 6—sibling relationships—to favor Father because Father has one other child and Mother does not have any other children. The court did not find this factor to be dispositive.

Child, despite the fact that the parties had been sharing physical custody of [] Child since September 2020?

B. Did the trial court err and abuse its discretion in determining factor number 1 (which party is more likely to encourage and permit frequent and continuing contact between [] Child and the other party) to be even, despite evidence that Mother has previously withheld [] Child from Father?

C. Did the trial court err and abuse its discretion in determining factor number 4 (the need for stability and continuity in [] Child's education, family life, and community life) to be even, despite the substantial evidence to the contrary?

D. Did the trial court err and abuse its discretion in determining factor number 10 (which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of [] Child) to be even, despite the fact Father has been the parent who has promoted [] Child's educational needs?

E. Did the trial court err and abuse its discretion in failing to award Father primary physical custody of [] Child based upon the totality of the statutory factors enumerated in 23 Pa.C.S. [] § 5328(a)?

Father's Br. at 15-16.

## A.

This court reviews a custody determination for an abuse of discretion, and "our scope of review is broad." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. *S.W.D.*, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the

- 4 -

proceedings and demeanor of the witnesses." **K.T. v. L.S.**, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Further, in a custody case, relief is not warranted unless the party claiming error suffered prejudice from the mistake. **J.C. v. K.C.**, 179 A.3d 1124, 1129-30 (Pa. Super. 2018).

The Custody Act requires a trial court to consider all of the Section 5328(a) custody factors when "ordering any form of custody," and further requires the court to give "weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S. § 5328(a). A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." **S.W.D.**, 96 A.3d at 401. **See also** 23 Pa.C.S. § 5323(a) and (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013).

When reviewing child custody matters and the trial court's consideration of the Section 5328(a) custody factors, our paramount concern is the best interests of the child. **See Saintz**, 902 A.2d at 512 (explaining that this Court's "paramount concern and the polestar of our analysis" in custody cases is the best interests of the child) (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which

- 5 -

legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***D.K.D. v. A.L.C.***, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." ***S.C.B. v. J.S.B.***, 218 A.3d 905, 916 (Pa. Super. 2019). Finally, in any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent and no preference based upon gender. 23 Pa.C.S. §§ 5327(a) and 5328(b).

### B.

In his first issue, Father avers that the trial court erred in its application of custody factor 3, which considers the parental duties performed by each party on behalf of the child. Father's Br. at 34; 23 Pa.C.S. § 5328(a)(3). Specifically, Father argues that it was an abuse of discretion for the trial court to employ the outdated "primary caretaker doctrine" to find that Mother's role as primary caretaker tipped the scales in her favor. ***Id.*** at 38. Father further argues that in ***M.J.M.***, this Court rejected the application of the primary caretaker doctrine, stating that it was "no longer viable." Father's Br. at 39 (citing ***M.J.M.***, 63 A.3d at 339). Father misstates this Court's holding in ***M.J.M.***

By way of background, the "primary caretaker doctrine" dates back forty years ago to ***Commonwealth ex rel. Jordan v. Jordan***, 448 A.2d 1113,

1115 (Pa. Super. 1982), where this Court held that in cases involving an award of primary custody "where two natural parents are both fit, and the child is of tender years, the trial court must give positive consideration to the parent who has been the primary caretaker."

Thirty years later in **M.J.M.**, this Court recognized that our legislature implemented "major revisions" to the Custody Act in 2011, including the addition of Section 5328, which, as discussed above, "sets forth a list of factors that a trial court must consider when making a custody determination." 63 A.3d at 338. In **M.J.M.**, we explain that the primary caretaker doctrine is "no longer viable" because it has now been incorporated into the Section 5328 custody factors. **Id.** at 339. Specifically, "the consideration the primary caretaker doctrine sought to address (which parent spent more time providing day to day care for a young child) is addressed implicitly" in custody factors 3 and 4. **Id.** (citing 23 Pa.C.S. 5328 (a)(3) ("The parental duties performed by each party on behalf of the child."; (a)(4) ("The need for stability and continuity in the child's education, family life and community life."). Moreover, "a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the [S]ection 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so[.]" **Id.** Accordingly, the trial court did not err when it considered Mother's role as Child's primary caretaker in its analysis of the Section 5328 custody factors.

Here, the trial court found that custody factor 3 favored Mother. The court emphasized that Child resided primarily with Mother until September 2020, when the parties exercised shared custody. Trial Ct. Op., 9/20/22, at 4. Moreover, Mother's schedule permits her to spend more time with Child during the day, necessarily providing more day-to-day care for Child. As the record supports the trial court's findings, we find no abuse of discretion.

## C.

Father next avers that the trial court abused its discretion when it determined that custody factor 1—which party is more likely to encourage and permit frequent and continuing contact between the child and the other party—was even, despite evidence that Mother has previously withheld Child from Father. Father's Br. at 38; 23 Pa.C.S. § 5328(a)(1). Father argues that the trial court heard undisputed evidence that Mother withheld Child from Father, and no evidence that Father withheld Child from Mother. *Id.* at 43. Specifically, Father avers that Mother withheld custody of Child from Father in 2019, prompting him to file a Custody Complaint. *Id.* at 40. Moreover, Father asserts that Mother was unavailable for several weeks in May 2020 and May 2022, and failed to disclose her whereabouts while Father cared for Child. *Id.* at 40-41.

The trial court acknowledged that Mother withheld Child from Father four years ago in August 2019 but placed weight on the fact that Mother "offered Father additional periods of physical custody over the course of time"

to make up for this transgression. Trial Ct. Op. at 3. As always, we decline to reweigh the evidence or usurp the trial court's credibility determinations. As the record supports the trial court's findings, we decline to find an abuse of discretion.

Moreover, Father's argument that custody factor 1 should have favored him because Mother failed to disclose her whereabouts is unavailing. While it might be relevant to the analysis of other custody factors, we fail to discern how it impacts custody factor 1, with compels the court to consider which party is more likely to encourage frequent and continuing contact between **the child** and the other party, not contact between the two parties.

## D.

In his third issue, Father asserts that the trial court abused its discretion when it concluded that custody factor 4—the need for stability and continuity in the child's education, family life, and community life—was neutral. Father's Br. at 43; 23 Pa.C.S. § 5328(a)(4). Father argues that this factor should weigh in his favor because he is gainfully employed, has a fiancée and a new child with her, and together they are able to care for Child and stick to a schedule. *Id.* at 49-51. Father argues that the trial court "focused on Mother with respect to [C]hild's schooling and activities" and failed to consider evidence that he enrolled Child in a formal preschool program, dance lessons, and summer camp. *Id.* at 50-51.

In analyzing this factor, the court credited Mother's testimony that Child has an excellent relationship with Maternal Grandparents and participates in activities with them, that Child participates in horseback riding and yoga when in Mother's care, and that Child's school is walking distance from their home. Trial Ct. Op. at 5. The court also acknowledged the parties' different employment and living situations and, overall, determined the factor to be even. *Id.* at 4-5. The record supports the trial court's findings and, once again, we decline to reweigh the evidence. Thus, we find no abuse of discretion.

## E.

In his fourth issue, Father avers that the trial court abused its discretion when it determined that custody factor 10—which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the child—did not favor either party. Father's Br. at 52; 23 Pa.C.S. §5328(a)(10). Father argues that the factor should favor him, because he is the one who has promoted Child's educational needs.[2] *Id.* at 52. Specifically, Father argues that he enrolled Child in preschool when Mother failed to. *Id.* at 54.

---

[2] To support this issue, Father also presents arguments that the trial court failed to consider his testimony regarding Child's medical treatments and Mother's disappearances over the years. These arguments are waived, as they were not raised in Father's Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived").

Mother testified that she made an intentional decision to not enroll Child in preschool because she did not "think it's the best option for a child when they're younger[,]" and that it was not her "style of parenting[.]" N.T. Trial, 9/8/22, at 48, 49. Instead, Mother informed the court that she likes to spend time with Child during the day and take Child to parks and playgroups as well as engage in arts and crafts. *Id.* at 22-23. Father fails to demonstrate how Mother's alternative activities failed to meet Child's educational needs. In fact, during his testimony, Father agreed that a "child can learn from many different activities outside of a classroom." *Id.* at 38. We discern no abuse of discretion in the trial court's conclusion that this factor is even.

**F.**

In his final issue, Father avers generally that the trial court abused its discretion when it failed to award Father primary physical custody of Child based on the totality of the statutory factors enumerated in Section 5328. Father's Br. at 59.

The trial court opined:

At the outset of the trial, Father stated that his reasons for seeking the relief he requests are that he fears for [] Child's safety, he fears for [] Child's life because of Mother's motor vehicle accident, Mother's DUI, Mother's marijuana use, and tension in Mother's house. However, he has failed to prove [these] allegation[s] with competent evidence.

Mother's reason for seeking the relief she requests is that [] Child is now of school age and the residences of the parties are too far for the parties to exercise shared physical custody. The parties agree to these two (2) points.

- 11 -

The above analysis results in the factors being even except for factor number [3], the primary caregiver.[3]  This factor favors Mother.  The parties agree that a decision must be made as to primary physical custody since [] Child is of school age and that they reside too far from each other to exercise shared physical custody and, based upon their addresses, the Court finds this agreement reasonable.  Therefore, the Court is, at the request of the parties, constrained to find that Mother must be awarded primary physical custody.

Trial Ct. Op. at 8.  As discussed above, our review of the records supports the trial court's findings.  We decline to reweigh the evidence or usurp the trial court's credibility determinations.  Accordingly, the trial court did not abuse its discretion when it awarded Mother primary physical custody of Child.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>October 25, 2023</u>

---

[3] The trial court found custody factor 6—sibling relationships—to favor Father because Father has one other child and Mother does not have any other children.  The court did not find this factor to be dispositive.

- 12 -